LAW OFFICE OF JEFFREY CAMPOLONGO       ATTORNEYS FOR PLAINTIFF
By: JEFFREY CAMPOLONGO, ESQUIRE
PA ATTORNEY I.D. # 82608
128 CHESTNUT STREET, SUITE 202
PHILADELPHIA, PA 19106
215.592.9293
215.592.9296 FAX

LAW OFFICE OF WILLIAM S. BRAVEMAN
BY: WILLIAM S. BRAVEMAN, ESQUIRE
PA ATTORNEY I.D. # 74200
510 WALNUT STREET
SUITE 1600
PHILADELPHIA, PA 19106
(215) 351 0611
(215) 922 3524 FACSIMILE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNA ARMSTRONG | : | |
| 600 PEMBROKE AVENUE | : | |
| EAST LANSDOWNE, PA 19050 | : | CIVIL ACTION |
|     PLAINTIFF, | : | |
| | : | NO.: |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PIEDMONT AIRLINES, INC., | : | |
| d/b/a US AIRWAYS EXPRESS | : | |
| 8500 ESSINGTON AVENUE | : | |
| PHILADELPHIA, PA 19153 | : | |
|     DEFENDANT. | : | |

**COMPLAINT**

I.    **INTRODUCTION**

Plaintiff, Suzanna Armstrong, is an adult individual who alleges through her attorneys, the Law Office of Jeffrey Campolongo and the Law Office of William Braveman, that her rights to be free from discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, have been violated and avers as follows:

**II.     PARTIES**

1.   Plaintiff, Suzanna Armstrong, is a Caucasian adult individual, who resides at the above captioned address.

2.   At all times material hereto, Plaintiff was an employee with Piedmont Airlines, Inc., d/b/a US Airways Express (hereinafter referred to as "Defendant US Airways Express").

3.   Defendant US Airways Express is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar work weeks in the current or preceding year.

**III.    JURISDICTION and VENUE**

4.   Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

5.   Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the laws of the Commonwealth of Pennsylvania, and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*.

6.   Plaintiff exhausted her administrative remedies when Plaintiff submitted a verified

complaint to the Pennsylvania Human Relations Commission ("PHRC") on or about August 24, 2011. This verified complaint was dual filed with the Equal Employment Opportunity Commission.

7. Plaintiff also exhausted her administrative remedies when she submitted a verified amended complaint to the PHRC on or about October 21, 2011. This amended complaint was dual filed with the Equal Employment Opportunity Commission.

8. On or about September 23, 2013, Plaintiff received her "Dismissal and Notice of Rights" for her federal claims against Defendant.

9. On October 21, 2012, it had been one (1) year since the filing of the PHRC complaints, thus Plaintiff is entitled to bring her claims pursuant to the PHRA against Defendant.

10. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

## IV. FACTS

11. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

12. Plaintiff is a Caucasian adult female who was hired by Defendant US Airways Express on or about January 28, 2008, and eventually began work as a Gate Agent.

13. Plaintiff was promoted to the position of Unit Manager (also referred to as a Ramp Manager) on or about April 4, 2011.

14. Plaintiff was qualified for the position as she was employed by Defendant for over 3

years and had no performance issues.

15. Plaintiff believes and avers she was subjected to intentional discrimination and disparate treatment based on her race (Caucasian) including, but not limited to, the following events:

16. On or about May 16, 2011, Plaintiff was informed by her supervisor, Lancelot Smith, (Hispanic), that her tattoos were unacceptable and that she needed to cover up the tattoos as soon as possible by wearing a long sleeve shirt or a jacket for the remainder of the day.

17. At that time, Plaintiff directed Mr. Smith to the employer handbook rules concerning tattoos.

18. On or about June 1, 2011, Mr. Smith told Plaintiff that she needed to go home and change her clothing because a small portion of a flower tattoo, less than 5% of the tattoo, was visible. No other tattoos were visibly exposed.

19. None of Plaintiff's tattoos at that time, including the small portion of a flower tattoo that was visible, contained any inappropriate words, vulgarities, or offensive or insensitive images.

20. Plaintiff again reminded Mr. Smith that the company policies in the Ramp Personnel Uniform and Appearance Guidelines at page 3 did not prohibit her from having her flower tattoo partially visible.

21. The applicable policy, which was effective in May and June of 2011, in the Ramp Personnel Uniform and Appearance Guidelines at page 3 paragraph 3(d) under "Jewelry/Body Art" stated that "Ramp agents must not have visible **offensive** tattoos or extreme piercings while on duty."

22. During the conversation with Mr. Smith on or about June 1, 2011, Plaintiff informed him that numerous other non-white employees and non-white managers have visible tattoos and that none of the non-white employees and non-white managers had been disciplined or criticized for permitting their tattoos to remain visible while working.

23. Numerous other non-white employees and/or non-white managers have violated the employer policy on having extreme piercings visible while on duty, but have suffered no discipline.

24. At no time prior to Mr. Smith's conversation in May 2011, or after June 1, 2011, did anyone, including supervisors, managers or customers, ever express any problems with Plaintiff's attire or tattoos.

25. On June 13, 2011, Plaintiff was suspended by Mr. Smith for insubordination for purportedly failing to cover her tattoos.

26. Defendant has a progressive discipline "Corrective Action" policy which provides that there is a four step which is "normally to be followed" wherein termination is the fourth step.

27. Following suspension, on or about June 22, 2011, Plaintiff was discharged by Defendant.

28. At the time Plaintiff was discharged, she had never before been disciplined or warned for insubordination.

29. Insofar as Defendant failed to progressively discipline Plaintiff for insubordination, Defendant violated its own progressive discipline policy.

30. Several non-white employees were treated more favorably because they also had visible tattoos or extreme piercings, but were not forced to cover them up.

31. Several non-white employees were treated more favorably because they also had visible tattoos or extreme piercings, but had not been disciplined or discharged for having their tattoos or extreme piercings visible.

32. Defendant US Airways Express's actions were due to Plaintiff's protected class.

### COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### RACE BASED DISCRIMINATION

33. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

34. At all material times, Plaintiff has been subjected to adverse employment action with Defendant US Airways Express based on her race, including but not limited to, suspension and discharge.

35. The aforementioned intentional discrimination was based on Plaintiff's race.

36. The racial discrimination which Plaintiff seeks to redress constituted employment practices which are made unlawful by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

37. As a direct and proximate result of Defendant's unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to, wage loss, pain and suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among her friends and co-workers, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

38. The above-mentioned acts were intentional, willful, wanton, malicious and

oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of punitive damages.

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

- a) Damages in a sum to exceed $100,000.00 for past and future monetary losses as a result of Defendant's unlawful discrimination;
- b) Compensatory damages;
- c) Punitive damages;
- d) Emotional pain and suffering;
- e) Reasonable attorneys' fees;
- f) Recoverable Costs;
- g) Pre and post judgment interest; and
- h) An allowance to compensate for negative tax consequences.

## COUNT II
### PENNSYLVANIA HUMAN RELATIONS ACT
### RACE BASED DISCRIMINATION

39. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

40. At all material times, Plaintiff has been subjected to adverse employment action with Defendant US Airways Express based on her race, including but not limited to suspension and discharge.

41. The aforementioned intentional discrimination was based on Plaintiff's race.

42. The race discrimination which Plaintiff seeks to redress constituted employment practices which are made unlawful by the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*.

43. As a direct and proximate result of Defendant's unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to wage loss, pain and

suffering, mental anguish, humiliation, loss of fringe benefits, painful embarrassment among her friends and co-workers, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff requests that the Court grant him the following relief against Defendant:

- a) Damages in a sum to exceed $100,000.00 for past and future monetary losses as a result of Defendant's unlawful discrimination;
- b) Compensatory damages;
- c) Emotional pain and suffering;
- d) Reasonable attorneys' fees;
- e) Recoverable Costs;
- f) Pre and post judgment interest; and
- g) An allowance to compensate for negative tax consequences.

### COUNT III
### DAMAGES FOR INTENTIONAL DISCRIMINATION
### PURSUANT TO 42 U.S.C. 1981

44. Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

45. Pursuant to 42 U.S.C. 1981, Plaintiff has been denied her right, because of her race, to make and enforce contracts and/or been denied the enjoyment of all benefits, privileges, terms and conditions of her contractual relationship with the Defendant.

46. By further reason of the above, Plaintiff has suffered, and may continue to suffer, severe mental and emotional pain, suffering, and humiliation.

47. The above-mentioned acts were intentional willful, wanton, malicious, intentional and oppressive and done with reckless disregard for Plaintiff's federally protected rights, therefore justifying the imposition of punitive damages.

**WHEREFORE**, Plaintiff requests that the Court grant her the following relief against Defendant:

    a)    Damages in a sum to exceed $100,000.00 for past and future monetary losses as a result of Defendant's unlawful discrimination;
    b)    Compensatory damages;
    c)    Emotional pain and suffering;
    d)    Reasonable attorneys' fees;
    e)    Recoverable Costs;
    f)    Pre and post judgment interest; and
    g)    An allowance to compensate for negative tax consequences, and
    h)    Punitive Damages

Respectfully Submitted,

December 11, 2013                      By:     JC3646
Date
                                          Jeffrey Campolongo, Esquire
                                          Law Office of Jeffrey Campolongo
                                          Identification No: 82608
                                          128 Chestnut Street, Suite 202
                                          Philadelphia, PA 19106
                                          (215) 592-9293
                                          (215) 592-9296 fax

                                          WSB6650
                                          William S. Braveman, Esquire
                                          Law Office of William S. Braveman
                                          Identification No: 74200
                                          510 Walnut Street, Suite 1600
                                          Philadelphia, PA 19106
                                          (215) 351-0511
                                          (215) 922-3524 fax